UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JAMES GOMES, )
      Petitioner, )
  )
v. ) Civ. Action No. 04-40017-RGS
  )
DAVID L. WINN, Warden, )
      Respondent. )
  )

**RESPONDENT'S MEMORANDUM OF LAW IN SUPPORT OF THE
MOTION FOR SUMMARY JUDGMENT**

**Introduction**

Petitioner has filed the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 challenging the loss of good conduct time and other privileges after a disciplinary hearing for a violation of Code 104, Possession of a Weapon or Sharpened Instrument. Petitioner alleges that his due process rights were violated, as the hearing was biased, prejudiced, and unfair. See Petition for Writ of Habeas Corpus, p. 4. He also states that his right to have witnesses present was violated "because evidence was withheld during investigation period." Id. Petitioner further contends that there is "no way the evidence present could support the conviction." Id. As relief, Petitioner requests that the disciplinary finding be vacated and his forty (40) day loss of good conduct time and other privileges be restored. Id. at p. 6.

## Facts

A.  Background

Petitioner James Gomes, Register Number 23823-038, is a federal inmate who has been incarcerated at the Federal Medical Center in Devens, Massachusetts (FMC Devens) since December 18, 2002. See **Document 1a**, Public Information Data, attached to the Declaration of FMC Devens Paralegal Trainee Stephanie Scannell ("Scannell Declaration").[1] On October 21, 2002, Petitioner was sentenced in the United States District Court for the District of Massachusetts to a 120-month term of incarceration with a five year term of supervised release to follow for Count One (1), Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922 (g)(1), and Count Two (2), Conspiracy to Possess with Intent to Distribute, in violation of 21 U.S.C. § 846. Scannell Declaration, **Document 1a**. Assuming Petitioner is granted all remaining Good Conduct Time available to him under 18 U.S.C. § 3624(b), his projected statutory release date on this docket is May 24, 2010. See Scannell Declaration, **Document 1a**. In the event that all of his remaining Good Conduct Time is disallowed, his full term expiration date is August 1, 2011. See Scannell Declaration, **Document 1a**.

B.  The Disciplinary Hearing

On July 19, 2003, Incident Report Number 1124685 was issued by Correctional Officer T. Flaven, charging Petitioner with Possession of a Weapon or Sharpened Instrument, a violation of Bureau of Prisons Prohibited Acts Code 104. See Scannell Declaration, **Document 1b**, Incident Report Number 1124685, §§ 9-13. The incident report stated that on July 19, 2003, at approximately 6:30 p.m., while conducting a shakedown of Petitioner's cubicle, two metal shanks were found under Petitioner's locker. Id. § 11. "The shanks were both sharpened on one end [and] wrapped in tape on

---

[1] The Scannell Declaration is attached as Exhibit 1 to this memorandum.

2

the other." Id.

On July 20, 2003, at approximately 1:20 p.m., Lieutenant K. Duby delivered a copy of Incident Report Number 1124685 to Petitioner. See Scannell Declaration, **Document 1b**, §§ 14-16. Lieutenant K. Duby initiated an investigation into the incident at that time, which included an interview with Petitioner. Id.§ 22. After Petitioner was advised of his rights and indicated that he understood them, he stated that "the items found were not his and that he [did] not know where they came from." Id.§§ 23-24. Petitioner requested no witnesses during the investigation. Id.§ 25. Upon concluding the investigation, Lieutenant Duby concluded that the incident report was accurate and the charges valid, and referred the case to the Unit Disciplinary Committee (UDC) for further action. Id.§§ 26-27.

On July 22, 2003, at approximately 10:00 a.m., a hearing was held before the UDC, which consisted of Unit Manager, T. Calabro, and Correctional Counselor, D. Premsingh. See Scannell Declaration, **Document 1b**, § 21. Petitioner appeared before the UDC and stated that "the shank is not mine or my cellies." Id.§ 17. Petitioner further stated that the shank might have been present in the cubicle before his occupancy, and that "I don't know why anybody would do this to me." Id.§ 17. At the conclusion of the initial hearing, the UDC referred the offense to the Discipline Hearing Officer (DHO) for disposition. Id.§ 18-19. This referral was based upon the nature of the charge, and based upon the possibility of greater sanctions. Id. The UDC's recommendation to the DHO, if Petitioner was found to have committed this prohibited act, was 45 days in disciplinary segregation and a 25% loss of Good Conduct Time. Id.§ 20.

On July 22, 2003, at approximately 10:00 a.m., following the UDC hearing, Petitioner was given notice of his DHO hearing. See Scannell Declaration, **Document 1c**, Notice of Discipline

Hearing Before the DHO. Petitioner was also advised of his rights before the DHO at that time. See Scannell Declaration, **Document 1d**, Inmate Rights at Discipline Hearing. Petitioner requested staff representation, and a staff member was appointed to the case. See Scannell Declaration, **Document 1c**. See also Scannell Declaration, **Document 1e**, Duties of a Staff Representative. Petitioner also provided the names of two inmate witnesses, and requested that they testify at the hearing on his behalf. See Scannell Declaration, **Document 1c**.

On July 24, 2003, at approximately 2:30 p.m., the disciplinary hearing was held. See Scannell Declaration, **Document 1f**, Discipline Hearing Officer Report, § I(B). Petitioner had a staff representative present at the hearing, who indicated that she had interviewed the requested inmate witnesses and advised Petitioner of their statements. Id. at § II(E). Petitioner indicated that he understood the charge, understood his rights, and had discussed the Incident Report with his staff representative. Id. at § III(B). During the hearing, Petitioner stated he had been in his assigned cell for two-and-a-half months. He further stated, "I didn't make the knives." Id. "I don't have a reason to possess a weapon." Id. "I didn't know it (reported weapon) was there." Id. At that time, Petitioner was afforded the opportunity to view a photograph of the reported weapons. Id.

Petitioner did not request any witnesses during the original investigation of the incident. See Scannell Declaration, **Document 1b**, § 25. However, as indicated on the "Notice of Discipline Hearing" form, Petitioner had requested two inmates to testify at the hearing that he did not possess a weapon. See Scannell Declaration, **Document 1c**. These two inmates both provided written statements on July 24, 2003. See Scannell Declaration, **Document 1f**, §§ III(C)(3), III(C)(4). See also Scannell Declaration, **Document 1g**, Written Statement of inmate A. Mourino, Register Number 15390-004, and Scannell Declaration, **Document 1h**, Written Statement of inmate D. Ferullo,

Register Number 23467-038. These statements provided, respectively, that "I never saw anyone go in or out (of Petitioner's cell)" and "I didn't see any weapon at all." See Scannell Declaration, **Document 1f**, § III(C)(3). See also Scannell Declaration, **Document 1g** and Scannell Declaration, **Document 1h**. Petitioner was advised of these statements at the DHO hearing. See Scannell Declaration, **Document 1f**, § III(C)(3). Based on the written statements, the DHO determined that these two witnesses could not provide any testimony to show that the reported weapons were not taken from Petitioner's cell, or that another inmate was responsible for the weapons. Id. Consequently, these two inmate witnesses were not called to the hearing. Id.

At the conclusion of the hearing, the DHO determined that Petitioner committed the prohibited act as charged, Code 104, Possession of a Weapon or Sharpened Instrument. See Scannell Declaration, **Document 1f**, §§ IV, V. The DHO indicated the finding was based upon the eyewitness account of the correctional officer, who stated that he confiscated two metal instruments with sharpened ends taped together from underneath the locker cabinet assigned to Petitioner. See Scannell Declaration, **Document 1f**, § V. The DHO's finding was also supported by the photographed documentation of the two sharpened instruments, which were determined to be purposely fashioned in a manner consistent with weapons. Id. See also Scannell Declaration **Document 1i**, Photograph of Sharpened Weapons found in G-A Unit, Cell 215, Under the Locker, Dated 7/19/03. Also, the DHO determined that these weapons could cause serious bodily harm to another person if wielded with sufficient force. See Scannell Declaration, **Document 1f**, § V.

Although the DHO considered Petitioner's statements, he determined that Petitioner failed to present sufficient evidence to refute the charge against him. See Scannell Declaration, **Document 1f**, § V. Because Program Statement 5270.07, <u>Inmate Discipline and Special Housing Units</u>,

5

notifies inmates of their responsibility to "keep their area free of contraband," the DHO concluded that Petitioner had a reasonable opportunity to inspect the entire cell prior to this incident. Id. See also Scannell Declaration, **Document 1j**, Bureau of Prisons Program Statement 5270.07, Inmate Discipline and Special Housing Units, § 3, Rights and Responsibilities of Inmates, p. 1. Therefore, the DHO determined that Petitioner committed the prohibited act based upon the greater weight of the evidence. See Scannell Declaration, **Document 1f**, § V.

After finding that Petitioner violated Code 104, Possession of a Weapon or Sharpened Instrument, the DHO imposed the sanction of 60 days Disciplinary Segregation (30 of 60 suspended pending clear conduct for 180 days) and disallowance of 40 days of good conduct time. See Scannell Declaration, **Document 1f**, § VI. The DHO also imposed a loss of commissary privileges for six months, a loss of social telephone privileges for six months, and a loss of social visiting privileges for six months (suspended pending clear conduct for 180 days).[2] Id. These sanctions were imposed to impress upon Petitioner and other inmates that such conduct will not be tolerated, and to deter Petitioner and other inmates from similar conduct in the future. See Scannell Declaration, **Document 1f**, § VII. They were also imposed to hold Petitioner responsible for the reported

---

[2]The loss of visiting, telephone and commissary privileges are not cognizable in habeas review. "[T]he Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." Meachum v. Fano, 427 U.S. 215, 224 (1976). In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court explained that due process liberty interests created by prison regulations are limited to instances where such regulations impose atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life. Id. at 484. The temporary loss of various privileges (*i.e.*, telephone, package, commissary, and recreation privileges) does not represent the type of deprivation which could reasonably be viewed as imposing an atypical and significant hardship on an inmate. Husbands v. McClellan, 990 F. Supp. 214, 217 (W.D. N.Y. 1998). See also, Frazier v. Coughlin, 81 F.3d 313, 317 (2nd Cir. 1996)(loss of commissary, recreation, package, and telephone privileges did not amount to an atypical and significant deprivation).

6

incident, as it threatens the security and orderly running of the institution. Id. Following this determination and imposition of sanctions, on July 31, 2003, Petitioner was provided with a copy of the DHO report and was advised of his right to appeal this action within twenty (20) calendar days under the Administrative Remedy Procedure. Id. at §§ VIII, IX.

C. <u>Exhaustion of Administrative Remedies</u>

Petitioner has exhausted all of his available administrative remedies on the issue that is the subject of this current petition.

**Argument**

I. <u>The Petitioner Was Afforded Due Process As Required By Bureau Of Prisons Regulations</u>

Petitioner Gomes contends that his due process rights were violated because the hearing conducted by the DHO was "bias[ed], prejudice[d], and denied the [P]etitioner a fair hearing." See Petition for Writ of Habeas Corpus, p. 4. Petitioner also states that his right to witnesses was violated. Id. These arguments lack merit.

The due process standards applicable to prison disciplinary proceedings are well settled, as the United States Supreme Court articulated the standards to be followed in prison disciplinary hearings in Wolff v. McDonnell, 418 U.S. 539 (1974). To safeguard due process, there must be: (1) advanced written notice of the disciplinary charges; (2) the opportunity, when consistent with institutional and correctional goals, to call witnesses and present documentary evidence; and (3) a written statement from the fact finder as to the evidence relied on and the reasons for the disciplinary action. Wolff v. McDonnell, 418 U.S. at 563-67.

Since Wolff, the BOP established regulations setting forth the procedures for DHO hearings. See 28 C.F.R. § 541.10 et seq. (2003). Under the applicable regulations, when Bureau staff have

7

reason to believe that a prohibited act has been committed by an inmate, an incident report must be prepared and referred for investigation. 28 C.F.R. § 541.14. After investigation, the incident report is referred to a Unit Disciplinary Committee (UDC) for an initial hearing. 28 C.F.R. § 541.15. The initial hearing is ordinarily held within three work days (excluding the day staff became aware of the incident, weekends, and holidays) from the time staff became aware of the inmate's involvement in the incident. 28 C.F.R. § 541.15(b). The inmate is entitled to be present, unless institutional security would be jeopardized. 28 C.F.R. § 541.15(c). Inmates are entitled to make a statement and present documentary evidence on their own behalf. 28 C.F.R. § 541.15(d). The UDC must consider all the evidence presented at the hearing and shall make its decision based on "at least some of the facts, and if there is conflicting evidence, it must be based on the greater weight of the evidence." 28 C.F.R. § 541.15(f). The UDC may either reach a finding whether a prohibited act was committed or refer the case to the Discipline Hearing Officer (DHO) for further hearing. 28 C.F.R. § 541.15(f). It is required that a written copy of the UDC decision and disposition be provided to the inmate. 28 C.F.R. § 541.15(f). Any minor disposition by the UDC is reviewable under the Administrative Remedy Procedure. The DHO has the authority to dismiss any charge, to find a prohibited act was committed, and to impose any available sanction for the act. 28 C.F.R. § 541.18.

The DHO hearing must be conducted pursuant to the procedures set forth at 28 C.F.R. § 541.17. Specifically, the regulations require the Warden to give the inmate advance written notice of the charges no less than 24 hours before the DHO hearing. 28 C.F.R. § 541.17(a). Next, the Warden must provide an inmate with a full time staff member to represent him/her at the DHO hearing, if the inmate desires. 28 C.F.R. § 541.17(b). At the DHO hearing, the inmate is entitled to make a statement and present documentary evidence. The inmate has the right to submit names

of requested witnesses and have them called to testify and to present documents. The DHO shall call those witnesses who have information directly relevant to the charges and who are reasonably available. The DHO need not call repetitive witnesses or adverse witnesses. 28 C.F.R. § 541.17(c). The inmate has the right to be present throughout the DHO hearing except during deliberation or when institutional security would be jeopardized. 28 C.F.R. § 541.17(d). The DHO must consider all evidence presented at the hearing. The decision of the DHO must be based on at least some facts, and if there is conflicting evidence, it must be based on the greater weight of the evidence. 28 C.F.R. § 541.17(f). Finally, the DHO must prepare a record of the proceedings. This record must be sufficient to document the advisement of inmate rights, the DHO's findings, the DHO's decision, and the specific evidence relied upon by the DHO. The record must include a brief statement of the reasons for the sanctions imposed. A copy of this record must be delivered to the inmate, ordinarily within 10 days of the hearing. 28 C.F.R. § 541.17(g).

In this case, the Petition should be denied, because Petitioner failed to establish that he was denied any of the above described procedures. The record indicates that Incident Report Number 1124685 was issued on July 19, 2003. See Scannell Declaration, **Document 1b**. On July 20, 2003, Petitioner was interviewed about the allegations. Id. at §§ 22-27. The UDC hearing was held on Monday, July 22, 2003. See Scannell Declaration, **Document 1b**, §§ 4, 21. Petitioner was present at the UDC hearing, during which it was determined that the case would be referred to the DHO for further hearing. See Scannell Declaration, **Document 1b**, §§ 17-19.

Petitioner was provided with advanced written notice of the charges against him at least 24 hours prior to the DHO hearings. See Scannell Declaration, **Documents 1b, 1c, 1f**. Petitioner was present throughout his DHO hearing. See Scannell Declaration, **Document 1f**. Petitioner requested

9

a staff representative, who appeared at the DHO hearing. See Scannell Declaration, **Documents 1d, 1e, 1f**. Petitioner made a statement to the DHO concerning the allegations against him. See Scannell Declaration, **Document 1f**, § III(b).[3] Petitioner also provided the names of two inmate witnesses to testify that he "didn't do this." See Scannell Declaration, **Document 1c**. These two inmate provided written statements prior to the DHO hearing, and Petitioner was advised of their statements. See Scannell Declaration, **Documents 1f, 1g, 1h**. As explained in the Discipline Hearing Officer Report, these two inmates were not called at the DHO hearing because based on their statements, they could not provide any further testimony to prove that the weapon was not taken from Petitioner's cell, or that another inmate was responsible. See Scannell Declaration, **Documents 1f, 1g, 1h**. The DHO's determination was based upon the greater weight of all the evidence presented. See Scannell Declaration, **Document 1f**, §§ IV, V. Finally, one week after the hearing on July 31, 2003, Petitioner was provided with a copy of the written report and sanctions from the DHO. See Scannell Declaration, **Document 1f**, § IX.

As discussed above, Petitioner received a fair hearing consistent with regulations, and he alleges no other procedural errors. To the extent Petitioner claims that he was denied due process, such claims are without merit and should be denied.

II.   The Decision Of The Discipline Hearing Officer Was Supported By Some Evidence And Must Be Upheld.

It is well settled that the decision of a prison disciplinary board is entitled to considerable deference by a reviewing court and the decision must be upheld if there is "some evidence" to

---

[3] It should be noted that Petitioner did not raise any procedural errors at the time he gave his statement to the DHO. Id.

10

support the decision. Superintendent v. Hill, 472 U.S. 445, 454-455 (1985); Thompson v. Owens, supra; Franco v. Kelly, 854 F.2d 584, 588 (2d Cir. 1988); Freeman v. Rideout, 808 F.2d 949, 954 (2d Cir. 1986). In announcing this standard, the Supreme Court stated that in reviewing the findings of prison disciplinary board, a court need not examine the complete record, assess the credibility of the witnesses, nor weigh the evidence. Instead, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56.

Applying this standard, once the reviewing court determines there is at least "some evidence" to support the findings of the board, the court must reject the evidentiary challenge by the petitioner and uphold the findings. Griffin v. Spratt, 969 F.2d 16, 22 (3d Cir. 1992); Thompson v. Owens, 889 F.2d 500, 501 (3d Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 954 (2d Cir. 1986).

In the instant case, Petitioner contends that the evidence does not support the DHO finding because his cell was in an open area, and the weapon found could have been deposited in his cell by anyone. This argument is extremely speculative, and is not supported by the available evidence.

The evidence available to the DHO at the time of the hearing concerning Incident Report 1124685 was the following:

1) Incident Report 1124685 and investigation;
2) Reported account of T. Flaven, Correctional Officer, who stated that he found two sharpened metal shanks hidden under Petitioner's locker;
3) Photograph of the Confiscated Items;
4) Statement from inmate A. Maurino (15390-004) saying that he never observed anyone going in or out of Petitioner's cell;
5) Statement from inmate D. Ferullo (23467-038) saying that he did not see any weapon;
6) Petitioner's statement that, "I didn't make the knives. I don't have a reason to possess a weapon. I didn't know it was there.";

11

7) Program Statement 5270.07, <u>Inmate Discipline and Special Housing Units</u>.

The Petitioner has not clearly rebutted the reasonable inference that contraband, located in a cell which he had occupied for several months, belonged to him. This reasonable inference is well beyond the quantum of proof required to uphold the DHO's finding. <u>Superintendent v. Hill</u>, 472 U.S. 445, 455 (1985) (the decision must be upheld if there is "some evidence" to support the decision.)[4]

The DHO's finding was based upon the eyewitness account the officer, who confiscated two metal instruments with sharpened ends from underneath Petitioner's locker cabinet. <u>See</u> Scannell Declaration, **Documents 1b** and **1f**. Upon review of the photograph of the metal instruments, the DHO determined they were purposely designed in a manner consistent with weapons, and could potentially cause serious bodily harm to another person. See Scannell Declaration, **Document 1f**, § V. The DHO determined that the officer's report was credible as written, and supported by the photograph. <u>Id</u>. The DHO considered Petitioner's denial of the charge and the statements of the inmate witnesses. <u>Id</u>. However, Petitioner did not present sufficient evidence to refute the claim,

---

[4] Indeed, Program Statement 5270.07, <u>Inmate Discipline and Special Housing Units</u>, clearly states, "It is your responsibility . . . to keep your area free of contraband." <u>See</u> Scannell Declaration, **Document 1j**, § 3, p.1. Upon arrival at FMC Devens on December 18, 2002, Petitioner received a copy of the Inmate Rights and Responsibilities. <u>See</u> Scannell Declaration, **Document 1n**, Intake Screening Form. The DHO determined that Petitioner had a reasonable opportunity prior to this incident to inspect his entire cell, including under his locker, in the event that the weapon had been placed there by another inmate. <u>See</u> Scannell Declaration, **Document 1f**, § V.

While, on its face, such a requirement may appear harsh, such a requirement serves the substantial governmental interest in preventing weapons in the facility. Inmates would not be deterred from possession of weapons if they could safely store them in another's cell, nor would inmates be deterred from "holding" weapons for others if there were no available sanction for doing so. In the context of a federal prison, it is entirely reasonable to place a burden upon inmates to keep their cells free of the contraband of others.

either by showing that the weapon was not confiscated from his cell, or by proving that it was placed there by another inmate. See Scannell Declaration, **Document 1f**.

Therefore, after considering all the evidence, the DHO relied upon the greater weight of the evidence in reaching his determination. Because the determination of the DHO was supported by some evidence, any challenge to the decisions of the DHO in finding Petitioner to have violated Code 104, Possession of a Weapon or Sharpened Instrument, should be denied.

## Conclusion

For the foregoing reasons, the Respondent requests that the court enter summary judgment in favor of the Respondent.

By his attorneys,
MICHAEL J. SULLIVAN
United States Attorney

/s/ Mark J. Grady
MARK J. GRADY
Assistant U.S. Attorney
U.S. Attorney's Office
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA  02210
Tel. No. (617) 748-3136

**Certificate of Service**

IT IS HEREBY CERTIFIED that on this _3/_ day of March 2004, service of the foregoing Motion has been made upon the following by depositing a copy in the United States mail, postage prepaid to, James Gomes, Reg#23823-038, Federal Medical Center- Devens, PO Box 879, Ayer, MA 01432.

/s/ Mark J. Grady
Mark J. Grady
Assistant United States Attorney

14

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JAMES GOMES,                        )
      Petitioner,                )
                                 )
v.                                  )   Civ. Action No. 04-40017-RGS
                                 )
DAVID L. WINN, Warden,              )
      Respondent.                )
                                 )

## DECLARATION OF STEPHANIE SCANNELL

I, Stephanie Scannell, hereby make the following declaration:

1. I am currently employed by the Federal Bureau of Prisons (BOP) of the United States Department of Justice as a Paralegal Trainee at the Consolidated Legal Center located at the Federal Medical Center (FMC) in Devens, Massachusetts. I have been employed at this position since approximately March 9, 2003, and have been with the BOP since October 10, 2002.

2. In order to perform my official duties as Paralegal Trainee, I have access to numerous records regarding prisoners maintained in the ordinary course of business at FMC Devens. This information includes documentary records and computerized records maintained on the Bureau of Prisons computerized data base.

3. I have reviewed the petition filed by James Gomes, Register Number 23823-038 in which he alleges that his due process rights were violated during his Institution Discipline Hearing. He further contends that there was insubstantial evidence to support his conviction.

4. Attached hereto, please find true and correct copies of the following documents:
   a. Public Information Data for inmate James Gomes, Register Number 23823-038;
   b. Incident Report Number 1124685;
   c. Notice of Discipline Hearing Before the DHO;
   d. Inmate Rights at Discipline Hearing;
   e. Duties of a Staff Representative
   f. Discipline Hearing Officer Report
   g. Written Statement of inmate A. Maurino, Register Number 15390-004;